UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Larry Hallums,
    Plaintiff,

    v.
Department of Veterans Affairs,
    Defendant.

No. 3:15-cv-841(VAB)

**RULING ON DEFENDANT'S MOTION TO DISMISS**

Plaintiff, Larry Hallums, *pro se*, filed this action against the Department of Veterans Affairs ("Veteran Affairs" or "VA"), alleging medical malpractice. On March 30, 2016, Mr. Hallums amended his Complaint to add three counts: gross negligence, incompetence, and pain and suffering. The Veteran Affairs has moved to dismiss the Amended Complaint in its entirety under Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6). For the reasons that follow, the motion is **GRANTED.**

**I. FACTUAL ALLEGATIONS**

Mr. Hallums alleges that, on January 29, 2012, he went to the emergency room at the Veterans Affairs Hospital ("VA Hospital") in West Haven, Connecticut, seeking treatment for a bug in his ear. Compl. ¶ 1. Mr. Hallums claims that, at this visit, a doctor informed him that he did not have a bug in his ear. *Id.* Medical records from this visit indicate that Mr. Hallums was discharged after a doctor concluded that he had a hole in his left tympanic membrane. *See* Medical Records (Jan. 29, 2012), Compl. at Attach. 4, p. 13. At oral argument, counsel for Defendant informed the Court that the medical professionals at the VA Hospital recommended that Mr. Hallums seek further

treatment with an Ear, Nose and Throat specialist, which Mr. Hallums did not attend because he had a conflicting appointment.  Mr. Hallums did not object to this contention.[1]

Instead of visiting the specialist, Mr. Hallums went to an appointment that he had scheduled at the VA Hospital in Newington, Connecticut on February 24, 2012.  Compl. ¶ 2.  At this visit, Mr. Hallums alleges, a doctor looked in his ear and saw a bug.  *Id.*  Mr. Hallums claims that he had to return to the VA Hospital in West Haven to have the bug removed.  *Id.*  In records dated February 24, 2012, Mary Demetrius, M.D. stated that Mr. Hallums had a "bug in L[eft] ear for several weeks" due to a "bed bug infestation" in his apartment building.  Medical Records (Feb. 24, 2012), Compl. at Attach. 5, p. 14-15.

Mr. Hallums later filed an administrative tort claim against the VA concerning his experience, which was received by the VA's Office of Regional Counsel on January 22, 2014.  *See* Letter of Jan. 27, 2014, Compl. at Attach. 3, p. 11.  In this claim, he alleged two million dollars in damages due to the West Haven VA Hospital's mishandling of his concerns about the bug in his ear.  *Id.*  On March 11, 2014, Mr. Hallums spoke with Michael Potter, an attorney for the VA.  *See* Letter of March 31, 2015, Compl. at Attach. 4, p. 12.  Mr. Potter offered to resolve the matter by settlement but Mr. Hallums declined.  *Id.*

---

[1] Administrative materials submitted as exhibits to the motion to dismiss, which are longer versions of documents Mr. Hallums attached to his Complaint, substantiate these statements.  *See* Medical Records, Ex. B to Mot. to Dismiss, ECF No. 12-2 at 11 (noting that Mr. Hallums was "seen in ED recently with complaints of strange feeling in left ear as if something was crawling around.  Was not able to keep appt with ENT due to new work schedule.  Symptom has since resolved."); Administrative Claim, Ex. A to Mot. to Dismiss, ECF No. 12-2 at 2-4 ("I went to the VA West Haven emergency room to have a bug removed out of my ear and was told by the doctor that there was nothing in my ear. -- That it was membrane.  She made an appointment for me to see an ear doctor in a few weeks but before that I had an appointment with my doctor at VA Newington."); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002) (a document that is not incorporated by reference may nevertheless be considered "where the complaint relies heavily upon its terms and effect, which renders the document 'integral' to the complaint.") (internal quotation marks and citation omitted); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir.1991) ("[A] plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough.").

On June 17, 2014, the VA denied Mr. Hallums's administrative tort claim. *See* Letter of June 17, 2014, Compl. at Attach. 1, p. 8.  In the denial letter, Defendant advised Mr. Hallums that if he was "dissatisfied with this decision, [he could] file a request for reconsideration." *Id*.  The letter specified that:

> To be timely, VA must receive th[e] request within six months of the mailing of this final denial.  The VA has six months to act on the reconsideration request.  After that time, you have the option of filing suit.

*Id.*  The letter added that Mr. Hallums could, "in the alternative," file suit "in accordance with the FTCA." *Id.* The letter did not specifically state that Mr. Hallums needed to file suit within six months and did not specifically cite 28 U.S.C. § 2401(b).

On April 27, 2015, ten months after it had denied Mr. Hallums's claim, the VA received Mr. Hallums's request for reconsideration. *See* Letter of May 6, 2015, Compl. at Attach. 2, p. 10.  In a letter dated May 6, 2015, the VA denied Plaintiff's request for reconsideration, stating that the request was untimely because Mr. Hallums had not filed it within six months of the initial denial as required by 28 C.F.R. § 14.9. *Id*.  Mr. Hallums subsequently filed this action on June 2, 2015.

## II.  STANDARD OF REVIEW

The VA seeks to dismiss Mr. Hallums's Complaint under Rule 12(b)(5) and Rule 12(b)(6), making two standards of review applicable.

First, "[u]nder Rule 12(b)(5), a party may file a motion to dismiss due to insufficiency of service of process." *Rzayeva v. United States*, 492 F.Supp.2d 60, 74 (D. Conn. 2007). "A motion to dismiss pursuant to Rule 12(b)(5) must be granted if the plaintiff fails to serve a copy of the summons and complaint on the defendants pursuant to Rule 4 of the Federal Rules [of Civil Procedure], which sets forth the federal requirements for service." *Id*. (citing *Cole v. Aetna Life & Cas.*, 70 F.Supp.2d 106, 110 (D. Conn. 1999)). "Once validity of service has been challenged, it becomes the plaintiff's burden to prove that service of process was adequate." *Id*. (internal quotations omitted).

3

Second, to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 570. Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" or "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. When determining whether the plaintiff has stated a plausible claim for relief, the Court may consider only "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The Court must accept the allegations in the complaint as true and draw all reasonable inferences in the light most favorable to the non-moving party. *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

Since Mr. Hallums is proceeding *pro se*, the Court must construe his Complaint and submissions liberally to protect him from the "inadvertent forfeiture of important rights [due to] lack of legal training." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal citation and quotation marks omitted).

### III.  DISCUSSION

Mr. Hallums brings this case under the Federal Tort Claims Act. The United States, "as sovereign, is immune from suit [unless] it consents to be sued," and the terms of its consent to be sued define the Court's jurisdiction to hear the suit." *Liranzo v. United States*, 690 F.3d 78, 84 (2d

Cir. 2012). The Federal Tort Claims Act waives the sovereign immunity of the United States so that it can be sued for "injury or loss of property ... caused by the negligent or wrongful act or omission of any [of its] employee[s] ... acting within the scope of his ... employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

A waiver of sovereign immunity must be "unequivocally expressed." *United States v. Testan*, 424 U.S. 392, 399 (1976). For this reason, a plaintiff bringing a claim under the Federal Tort Claims Act must comply with the Act's specific requirements. *United States v. Kubrick*, 444 U.S. 111, 117-18 (1979) ("[T]he [Federal Tort Claims Act] waives the immunity of the United States and that in construing the statute of limitations, which is a condition of that waiver, we should not take it upon ourselves to extend the waiver beyond that which Congress intended."). The Act's waiver of immunity is strictly construed in favor of the government. *Long Isl. Radio Co. v. NLRB*, 841 F.2d 474, 477 (2d Cir.1988).

In analyzing a claim under the Federal Tort Claims Act, the Court applies the substantive law of the state where the incident occurred. *Castro v. United States*, 34 F.3d 106, 110 (2d Cir.1994). Since this incident occurred in the State of Connecticut, Connecticut law will be applied.

### A. Motion to Dismiss under Rule 12(b)(5)

The VA argues that Mr. Hallums's claims should be dismissed because he did not serve a good faith certificate with his initial complaint, resulting in ineffective service of process. *See* Mot. to Dismiss, 6-8, citing Conn. Gen. Stat. § 52-190a(c). The Court agrees.

"[T]o prevent the filing of frivolous medical malpractice actions," *Morgan v. Hartford Hosp.*, 301 Conn. 388, 398 (2011), Connecticut law requires any person claiming medical malpractice to include with her complaint a certificate of good faith and a written opinion from a health care provider regarding the evidentiary basis for her claim. Specifically, Connecticut law requires that:

> "(a) No civil action ... shall be filed to recover damages resulting from personal injury ... in which it is alleged that such injury … resulted from the negligence of a health care provider, unless the attorney or party filing the action ... has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. The complaint ... shall contain a certificate of the attorney or party filing the action ... that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant .... To show the existence of such good faith, the claimant or the claimant's attorney ... shall obtain a written and signed opinion of a similar health care provider ... that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion ... and shall attach a copy of such written opinion ... to such certificate. ...
> ...
> (c) The failure to obtain and file the written opinion required by subsection (a) of this section shall be grounds for the dismissal of the action."

Conn. Gen. Stat. § 52-190a. The Connecticut Supreme Court has "recognize[d] that the written opinion letter, prepared in accordance with the dictates of § 52-190a, like the good faith certificate, is akin to a pleading that must be attached to the complaint in order to commence properly the action." *Morgan*, 301 Conn. at 398. As a result, failure to include the certificate and written opinion amounts to a failure of service, which deprives the Court of personal jurisdiction. *Id.* at 395-402.

Following Connecticut law, courts in this District have dismissed medical malpractice actions brought under the FTCA for noncompliance with § 52-190a's service requirements. *See Freeman v. United States*, 166 F. Supp. 3d 215, 219-20 (D. Conn. 2016) ("A federal court may dismiss a case for failure to file a good faith certificate within 120 days of the complaint's filing pursuant to Rule 4(m)."); *Slocum v. U.S. Dep't of Veterans Affairs*, No. 3:13-cv-501, 2014 WL 4161985, at *3 (D. Conn. Aug. 19, 2014) ("Here, Slocum timely filed a FTCA claim, but the good faith certificate was not filed with the complaint or served on the defendant within 120 days of the complaint's filing. Therefore, I could have dismissed the complaint without prejudice pursuant to Rule 4(m)."). In this case, Mr. Hallums does not allege that he complied with § 52-190a's service requirements. For this reason, the Court should dismiss his case under Rule 12(b)(5) without prejudice to his re-filing his Complaint with the proper certificate. *Slocum*, 2014 WL 4161985, at *3; *Meilleur v. Strong*, 682

6

F.3d 56, 61 (2d Cir. 2012) ("Rule 4(m) gives a district court discretion to grant an extension for service of process, even in the absence of 'good cause).'"

### B. Motion to Dismiss under Rule 12(b)(6)

Even if Mr. Hallums had properly served his Complaint, the VA argues that the Court should dismiss his claims under Rule 12(b)(6).  The VA makes several arguments: first, that the Department of Veteran's Affairs should be dismissed as a defendant in the case and replaced with the United States and second, that Mr. Hallums's Complaint is time-barred because he failed to bring his claim within six months of the VA's June 17, 2014 final denial.  Mr. Hallums has not responded to these arguments. *See* Opp. Mem., ECF No. 18, 2. In any event, the Court agrees with the VA.

The Federal Tort Claims Act expressly provides "that only the United States may be held liable for torts committed by a federal agency, and not the agency itself." *C.P. Chemical Co., Inc. v. United States*, 810 F.2d 34, 37 n. 1 (2d Cir.1987) (citing 28 U.S.C. § 2679(a)).  Courts, however, have allowed plaintiffs suing under the Act to amend their complaints to name the United States as Defendant, or have substituted the United States as Defendant *sua sponte*.  *See Bowman v. U.S. Postal Serv.*, No. 02 CIV. 6138 (SHS), 2003 WL 1395821, at *2 (S.D.N.Y. Mar. 20, 2003) ("In lieu of requiring a *pro se* litigant to further amend the Amended Complaint to name the United States as a defendant, this Court will on its own motion substitute the United States as the defendant in the place and stead of the United States Postal Service and United States Postal Inspection Service.").

Even if the proper party had been properly sued, however, dismissal of this case would still be warranted because Mr. Hallums failed to file his lawsuit within six months of his "final denial" under the Federal Tort Claims Act.

The Federal Tort Claims Act provides that "a tort claim against the United States shall be forever barred … unless action is begun within six months after the date of mailing … of a notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b).  Applicable regulations allow a claimant to file a written request for reconsideration of an agency's final denial of

his or her claim. 28 C.F.R. § 14.9(b). A request for reconsideration prevents the agency's initial denial from becoming "final" for the purposes of Section 2401(b) and tolls the six-month limitation period until either the agency responds or six more months pass. *Id.* ("Upon the timely filing of a request for reconsideration the agency shall have six months from the date of filing in which to make a final disposition of the claim and the claimant's option under 28 U.S.C. 2675(a) shall not accrue until six months after the filing of a request for reconsideration.")

In order to toll the six-month statute of limitations for Federal Tort Claims Act actions, a claimant's request for reconsideration must be received by the relevant agency within the appropriate deadline. *Smith v. United States*, 585 F. Supp. 624 (E.D. Mich. 1984), *aff'd*, 798 F.2d 1416 (6th Cir. 1986); *see generally Fogel v. Dep't of Def.*, 36 F. App'x 473, 474 (2d Cir. 2002) ("If the statutory limitation period were to start anew each time a request for reconsideration was denied, the purpose of the limitation would be defeated."); *Phillips v. Generations Family Health Ctr.*, 723 F.3d 144, 148 (2d Cir. 2013) (reiterating the Federal Tort Claims Act's statute of limitations and administrative presentment requirements).

In *Smith*, the claimant timely submitted his medical malpractice claim to the VA, but submitted a request for reconsideration after the six-month deadline set out in 28 C.F.R. § 14.9. *Smith v. United States*, 585 F. Supp. at 624. The claimant filed suit in federal court nine months after the original denial and the court dismissed his action as untimely. *Id*. at 625. ("Because the claimant did not comply with the six month limitation on requests for reconsideration, the date of the original denial controls and the action is untimely."); *see also Isahack v. United States*, No. 00 Civ. 9656 (BSJ), 2001 WL 1456519, at *2 (S.D.N.Y. Nov. 15, 2001) ("If … a request for reconsideration is not properly or timely filed, the six-month period begins running from the date of the original denial of the administrative claim."). In short, when an agency denies a claimant's request for reconsideration as untimely, the date of the agency's original denial controls for the purposes of the Federal Tort Claims Act's statute of limitations.

Mr. Hallums filed a request for reconsideration with the VA ten months after it had denied his administrative tort claim. Because it received that request outside of 28 C.F.R. § 14.9(b)'s six-month time period, the VA denied the request as untimely. The June 17, 2014 denial of his initial administrative claim was, therefore, the "final denial" that Mr. Hallums challenges in this case. Because it was filed more than six months after June 17, 2014, the date of the VA's "final denial," Mr. Hallums's Complaint is time-barred under § 2401(b).

At oral argument, Mr. Hallums explained that he believed that he was allowed to file his Complaint within one year of the Department's June 17, 2014 final denial, citing the final denial letter.  The letter stated that:

> [T]o be timely, VA must receive th[e] request within six months of the mailing of this final denial.  The VA has six months to act on the reconsideration request.  After that time, you have the option of filing suit.

Letter of June 17, 2014, Compl. at Attach. 1, p. 8.  The letter made no other reference to a specific time limitation on Mr. Hallums's right file a lawsuit.  Instead, it stated that "further action on this matter may be instituted in accordance with the FTCA" and cited to the statute.  *Id.*  In other words, it did not specifically mention that there was a six month window in which Mr. Hallums needed to file either a federal lawsuit, but did mention a that a six month deadline applied to his request for reconsideration of the agency's denial.  *See id*.

Mr. Hallums's failure to file this lawsuit within the statute of limitations period could be saved by equitable tolling, but no such circumstances exist here.  In *United States v. Wong*, the Supreme Court held that § 2401(b)'s bar on claims not presented within the statute of limitations period "speaks only to a claim's timeliness, not to a court's power." *United States v. Wong*, --U.S.--, 135 S. Ct. 1625, 1632-33 (2015) ("What matters is that § 2401(b) does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts."). The FTCA's six-month statute of limitations therefore may be equitably tolled, if a plaintiff can show that she "pursued [her] rights

diligently but some extraordinary circumstance prevent[ed] [her] from meeting a deadline." *Id.* at 1630-31 (quotation omitted).

Equitable tolling, however, "is considered a drastic remedy applicable only in rare and exceptional circumstance[s]," because statutes of limitations "protect important social interests in certainty, accuracy, and repose." *A.Q.C. ex rel. Castillo v. U.S.*, 208 F.3d 13, 17 (2d Cir.2000) (internal quotation marks and alteration omitted) (concluding that, even if equitable tolling applied to FTCA actions, it was inappropriate when the plaintiff "did not act diligently."). Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: "(1) that she has been pursuing her rights diligently, and (2) that some extraordinary circumstance stood in her way." *Id.* Whether a plaintiff has acted with due diligence is a fact-specific inquiry, guided by the court's assessment of how a "reasonable person in the [plaintiff]'s situation" would behave. *Valverde v. Stinson*, 224 F.3d 129, 136 (2d Cir. 2000).

The Supreme Court has approved of the use of equitable tolling "in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990) (footnotes omitted). The *Irwin* court explained that courts should be "much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." *Id.*

Courts interpreting *Irwin* have applied the equitable tolling doctrine when plaintiffs "received inadequate notice" of a filing deadline from an agency. *South v. Saab Cars USA*, Inc., 28 F.3d 9, 11-12 (2d Cir.1994) (noting that "[t]he doctrine of equitable tolling has ... been applied where the court … led the plaintiff to believe that she had done all that was required of her."); *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984) (allowing equitable tolling when an EEOC official had "erroneously advised [the plaintiff] that the complaint could be filed late"); *Williams v.*

10

*CLE Corp.*, 556 F.2d 346, 350-51 (5th Cir.1977) (holding that equitable tolling was appropriate when EEOC sent "patently misleading" letter to the plaintiff), *cert. denied*, 434 U.S. 1045 (1978).

The Court need not address the issue of whether the VA's letter gave Mr. Hallums "inadequate notice," *South*, 28 F.3d at 12, or "induced" Mr. Hallums to misunderstand the deadline, *Irwin*, 498 U.S. at 96.  While Mr. Hallums's denial letter did not clearly state the statute of limitations for filing a lawsuit, Mr. Hallums's suit is time-barred because he filed an untimely request for reconsideration which made his eventual suit untimely as well.  The denial letter was clear about the deadline for requests for reconsideration: the VA "must receive th[e] request for reconsideration within six months."  *See* Letter of June 17, 2014, Compl. at Attach. 1, p. 8.  While the letter may have obscured the six month deadline that applied to claimants who did not file requests for recommendation, Mr. Hallums did request reconsideration, so the potential ambiguity did not cause Mr. Hallums's delay.  Instead, Mr. Hallums's failure to timely file his reconsideration request suggests that he was not diligent in his pursuit of his case at the administrative level, despite clear instructions about the applicable deadline.  For these reasons, equitable tolling is not appropriate for his case.

The court notes, however, that the VA's letter is far from clear about the six month deadline that applies to claimants who do not choose to request reconsideration of denial letters.[2]  Claimants would be best served by a letter that clearly stated the applicable statute of limitations, rather than just referring them to the statute.  *Cf. Gibson v. N.Y. City Police Dep't*, 201 F.3d 431 (2d Cir. 1999) (observing that the police department's "letter would have been clearer and therefore fairer had it

---

[2] The Department of Veterans Affairs seems to use a different letter in other circumstances.  In *Freeman v. United States*, the court cited the letter of denial that Mr. Freeman received for his first SF-95 claim, which stated that "further action on the matter may be instituted in accordance with the FTCA, section 1346(b) and 2671-2680, title 28, United States Code, which provides, in effect, that a tort claim that is administratively denied may be presented to a Federal district court for judicial consideration. *Such a suit must be initiated, however, within 6 months after the date of mailing of this notice of final decision as shown by the date of this letter." Freeman v. United States*, 166 F. Supp. 3d 215, 222 (D. Conn. 2016).

made plain that the Department's decision constituted a final determination," but declining to apply equitable tolling because the letter "did not hide [the statute of limitations] from [the plaintiff] or mislead her into believing that Title VII's filing provision did not apply"); *Smith v. Potter*, No. 07CV1787(JG)(JB), 2008 WL 4371364, at *6 (E.D.N.Y. Sept. 19, 2008) (noting the "troubl[ing]" and "misleading" instructions on an EEOC form, which set out the request for reconsideration process but did not "specifically state that the 90-day period would not be tolled if a request for reconsideration were made," but declining to toll the statute of limitations because the plaintiff had not "acted with reasonable diligence").

Because Mr. Hallums initiated the present action more than six months after the VA issued its "final decision" in his case, and because the statute of limitations cannot be equitably tolled in this case, his claims must be dismissed as untimely.

## IV. CONCLUSION

The VA's motion to dismiss is GRANTED. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED at Bridgeport, Connecticut this 30th day of March 2017.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE